IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jolitta P.,[1] | ) | Civil Action No.: 6:23-cv-4912-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Michelle King, Acting Commissioner of | ) | |
| Social Security Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |

_____

This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision, which denied Plaintiff Jolitta P.'s ("Plaintiff") claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. The record includes the report and recommendation ("Report") of United States Magistrate Judge Kevin F. McDonald, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.

In his Report, the Magistrate Judge recommends that the Court affirm the Commissioner's final decision denying benefits. Plaintiff filed written objections to the Report, and the Commissioner filed a reply to Plaintiff's objections. *See* 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's Report within 14 days after being served a copy). For the reasons stated below, the Court

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in Social Security cases, federal courts should refer to claimants by their first names and last initials.

[2] Michelle King was named Acting Commissioner of Social Security in January 2025.

overrules Plaintiff's objections, adopts the Magistrate Judge's Report, and affirms the Commissioner's final decision denying benefits.

**BACKGROUND**

Plaintiff filed an application for disability insurance benefits on February 26, 2015, alleging that she became unable to work on November 10, 2010. Plaintiff filed an application for supplemental security income benefits on April 22, 2015, alleging that she became unable to work on November 10, 2010. The applications were denied initially and upon reconsideration. On January 12, 2016, Plaintiff requested a hearing, which was held on November 6, 2017. Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified before Administrative Law Judge ("ALJ") Susan Poulos. On February 1, 2019, ALJ Poulos considered the case *de novo* and found that Plaintiff was not under a disability. On June 15, 2019, however, the Appeals Council issued an order remanding the matter to the ALJ to issue a new decision.

On December 3, 2019, a second administrative hearing was held, at which Plaintiff, represented by counsel, and another VE appeared and testified before ALJ Benjamin McMillion. On February 27, 2020, ALJ McMillion considered the case *de novo* and found that Plaintiff was not under a disability as defined in the Social Security Act, as amended. ALJ McMillion's finding became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 13, 2020.

On December 16, 2020, Plaintiff filed a complaint in this Court, and on November 30, 2021, the case was remanded to the Commissioner for further proceedings based on a voluntary motion to remand by the Commissioner. *See Pinkney v. Comm'r Soc. Sec. Admin.*, No. 6:20-cv-4349-BHH (D.S.C. Nov. 30, 2021). On June 2, 2022, the Appeals

Council issued an order remanding the matter to the ALJ to issue a new decision in accordance with the order and consolidating Plaintiff's later-filed applications.

On November 29, 2022, Plaintiff, represented by counsel, and another VE appeared and testified at a third administrative hearing before ALJ Paul Erkin.  On March 10, 2023, ALJ Erkin considered the case *de novo* and found that Plaintiff was not under a disability.  ALJ Erkin's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review on August 1, 2023.  Plaintiff filed the instant action for judicial review on October 2, 2023.

## **STANDARDS OF REVIEW**

**I.      The Magistrate Judge's Report**

The Magistrate Judge makes only a recommendation to the Court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261 (1976).  The Court is charged with making a *de novo* determination only of those portions of the Report to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendations of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

**II.     Judicial Review of a Final Decision**

The federal judiciary plays a limited role in the administrative scheme as established by the Social Security Act.  Section 405(g) of the Act provides that "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  "Consequently, judicial review . . . of a final

decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether substantial evidence exists, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## **DISCUSSION**

**I.     The Commissioner's Final Decision**

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c) If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments

> listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a) . If the answer is in the affirmative, the final consideration looks to whether the impairment precludes that claimant from performing other work.

*Mastro*, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. Then, if the claimant successfully reaches step five, the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that the claimant could perform, taking into account the claimant's medical condition, functional limitations, education, age, and work experience. *Walls*, 296 F.3d at 290.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the relevant time period. Next, the ALJ determined that Plaintiff has the following severe combination of impairments: degenerative disc disease of the lumbar spine; fibromyalgia; Sjogren's syndrome; degenerative joint disease of the bilateral shoulders and hips; coronary artery disease; and obesity. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. With regard to Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except for the following limitations: no more than frequent overhead reaching with the bilateral upper extremities; no more than occasional stooping, kneeling, crouching, crawling, or balancing

(as defined in the DOT/SCO); no more than occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; no more than occasional exposure to hazards such as unprotected heights and dangerous machinery; no more than frequent exposure to dust, fumes, gases, odors, or pulmonary irritants; and no more than frequent exposures to extremes of humidity, heat, or cold.  The ALJ found that Plaintiff is capable of performing past relevant work as cleaner/housekeeper and small business owner.  Accordingly, the ALJ found that Plaintiff has not been under a disability during the relevant time.

**II.     The Court's Review**

In Plaintiff's brief, filed on January 11, 2024, she raises the following issue:

> The ALJ's decision must contain an evaluation of all of a claimant's impairments which are supported by the evidence in the case record.  The ALJ failed to properly follow SSR 12-2p, which expressly explains how to evaluate claims involving fibromyalgia.  When the ALJ fails to follow the Commissioner's own ruling by failing to properly evaluate all of [Plaintiff]'s severe impairments, can the ALJ's decision stand?

(ECF No. 15 at 7.)

In the Report, the Magistrate Judge thoroughly summarized the administrative proceedings and the applicable law, including Social Security Ruling 12-2p, which provides the proper framework for an ALJ's consideration of a claimant with fibromyalgia, and then the Magistrate Judge considered Plaintiff's argument.  The Magistrate Judge first noted that Plaintiff made *no* reference to the record when arguing that the ALJ failed to consider the waxing/waning nature of fibromyalgia as well as Plaintiff's complaints of fatigue.  (*See* ECF No. 20 at 8 (noting that Plaintiff "does not provide any support for her argument that the ALJ erred in his consideration of the plaintiff's fibromyalgia" and stating that courts have deemed issues waived when a plaintiff raises it in a perfunctory manner).)  Despite

Plaintiff's failure to properly support her position, the Magistrate Judge nevertheless proceeded to evaluate the ALJ's consideration of Plaintiff's fibromyalgia in light of *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020) (explaining that "ALJs may not discredit a claimant's subjective complaints regarding fibromyalgia symptoms based on a lack of objective evidence"). Ultimately, the Magistrate Judge was not persuaded by Plaintiff's argument. The Magistrate Judge stated:

> First, contrary to the plaintiff's assertion – and in compliance with *Arakas* – the ALJ in this case did not just reject the plaintiff's fibromyalgia complaints based on a lack of objective evidence; instead, the ALJ examined the longitudinal record evidence in finding the plaintiff's fibromyalgia did not require additional limitations in the RFC assessment. The ALJ's decision contains a detailed summary of the plaintiff's medical records during the relevant period, from 2010 to the date of the decision (*see* Tr. 5629–39). For example, as set forth by the ALJ, the plaintiff's treatment records noted treatment for fibromyalgia (sometimes with a rheumatologist and sometimes with other providers), although the treatment was conservative in nature (with flares reported on occasion) (Tr. 5629–39). Based on the relatively conservative treatment in the plaintiff's longitudinal treatment records, the ALJ limited the plaintiff to a range of light work with postural and environmental limitations (Tr. 5636). Further, the ALJ noted that a longitudinal examination of the plaintiff's activities of daily living ("ADLs") did not support RFC limitations in addition to those imposed (Tr. 5629–39). For example, although the plaintiff testified that she was limited to walking twenty steps, standing twenty to thirty minutes, sitting thirty minutes, and lifting or carrying ten to fifteen pounds, with seven bad days a month, she also testified that she shared a residence with family members, was able to manage her personal care routine, did some household chores, could prepare simple meals, managed her finances, watched some television, drove regularly, shopped in stores for groceries, attended college courses, was able to read some, cared for her brother and got him into programs with the cancer society, helped her husband get in and out of the bed/chair, worked in the yard, and attended church (Tr. 314, 323, 343–44, 5629–39, 5670–73, 5684, 5690–92, 5693–94, 5682). Indeed, as noted by the ALJ, although the plaintiff reported only being able to walk twenty steps, she reported to Jonathan Fisher, M.D., in April 2019 that she was able to walk a mile three times per week, was feeling great, and was "faster" than her daughter (Tr. 2480–81, 5634). The plaintiff also reported spraining her ankle in 2020 after playing volleyball (Tr. 5635, 6019–22). During this same time, the plaintiff also went through the process to become a foster parent, and

7

> while fostering for three weeks, she acted as the home school teacher for her foster child (Tr. 5670–71, 7740, 7758). Further, as noted by the ALJ, although the plaintiff reported fatigue on occasion, her reports of "periodic" fatigue – some of which were due to anemia and not fibromyalgia – without "specific major complaints" did not warrant more limitations than imposed in the RFC assessment (Tr. 908, 909, 1642, 2371–76, 5631, 5633–34). Further, as noted by the ALJ, the plaintiff reported in 2019 that she had increased fatigue, but that was secondary to being off of treatment since July 2017 (Tr. 5535, 5633–34).

(ECF No. 20 at 9-10.)

In her objections, Plaintiff acknowledges the issue of waiver and apologizes for not being clear in her argument. (ECF No. 25 at 1.) Plaintiff then asserts that she did cite to the ALJ's decision, which, according to Plaintiff, "highlighted only the negative objective findings, which does not properly negate her acknowledged, subjective complaints." (*Id.* at 1-2.) Plaintiff also objects that conservative care is appropriate for fibromyalgia and that flares are consistent with the waxing and waning nature of fibromyalgia. (*Id.* at 3.) According to Plaintiff, the "the ALJ's summary shows that he was looking for objective evidence of [Plaintiff]'s pain and fatigue," contrary to *Arakas*. (*Id.*) Plaintiff further objects that the "Magistrate Judge allows the ALJ's decision to stand despite the fact that the ALJ did not explain how any of [Plaintiff]'s activities proved she could 'persist through an eight-hour workday.'" (*Id.* at 4.) Lastly, Plaintiff asserts that she does not "claim that the ALJ erred by failing to consider a specific allegation of [hers] or that there was any piece of record evidence that he ignored. Rather, it's that the ALJ's decision itself, specifically the ALJ's discussion of the evidence, shows that the ALJ was demanding objective evidence of pain and fatigue before he would credit [Plaintiff]'s complaints of disabling pain and fatigue." (*Id.* at 5.)

After *de novo* review, the Court finds Plaintiffs' objections unavailing. First, the Court

agrees with the Magistrate Judge that Plaintiff effectively forfeited her argument by failing to properly develop it.  Even overlooking this failure, however, and considering the issue raised by Plaintiff, the Court also fully agrees with the Magistrate Judge that the ALJ's evaluation of Plaintiff's fibromyalgia is consistent with Social Security Ruling 12-2p and *Arakas* and is supported by substantial evidence.  Stated plainly, the ALJ properly considered Plaintiff's subjective complaints about fibromyalgia and specifically included restrictions in the RFC to account for effects from fibromyalgia, consistent with Social Security Ruling 12-2p.  (*See* ECF No. 12-3 at 436-39.) .  Importantly, Plaintiff does not identify any additional restrictions the ALJ should have included; nor does she point to any record evidence ignored by the ALJ in assessing Plaintiff's RFC.  Ultimately, the Court agrees with the Magistrate Judge that the ALJ did not discount Plaintiff's subjective complaints solely because of a lack of objective evidence; rather, the ALJ gave due consideration to Plaintiff's subjective complaints of pain and highlighted inconsistencies with the record evidence, and the Court finds that the ALJ's decision complies with the applicable law and permits meaningful judicial review.

## CONCLUSION

Based on the foregoing, the Court adopts and specifically incorporates the Magistrate Judge's Report (ECF No. 20); the Court overrules Plaintiff's objections (ECF No. 25); and the Court affirms the Commissioner's final decision denying benefits.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

February 4, 2025
Charleston, South Carolina